## Hall v. Montgomery County Fiscal Court.

(Decided November 15, 1921.)

### From Montgomery Circuit Court.

1. Counties—Public Improvements—Construction of Roads—Bonds.—An election, at which a bond issue of $250,000.00 in amount by the fiscal court of Montgomery county for the construction of public roads therein was approved by more than the required majority of votes, was not invalidated nor the right of the fiscal court to issue and sell the bonds obstructed by a pre-election order of that court providing that the proceeds thereof should not be expended, except upon such roads of the county as were or might be constructed or reconstructed by state or federal governmental aid, or private aid, 25% of the total net cost of such construction or reconstruction to be paid by the county and 75% thereof by the state or federal government, private person or persons.

2. Counties—Construction of Roads—Bonds.—Although such order is to be regarded as a contract between the fiscal court and voters of the county by which both are equally bound, in the absence of a charge and showing of bad faith or intended present or future misapplication by the fiscal court of the proceeds arising from the sale of the bonds, it will not be presumed that they will not be expended as required by the pre-election order of that court.

3. Counties—Construction of Roads—Bonds.—At is appears from the pre-election order that certain roads of the county named therein already had been assured both state and federal aid, and one of them selected for early construction with such aid, the circuit court properly refused the plaintiff, a taxpayer, an injunction restraining the issuance or sale by the fiscal court of $35,000.00 worth of the county's bonds admittedly required to pay its 25% of the total net cost of such selected roads' construction.

4. Counties—Construction of Roads—Withdrawal of Aid—Bonds.—Whether, in the event of the withdrawal of state, federal or private aid, the fiscal court would have the power to expend the proceeds of the bonds in road construction under some other plan is a question not now presented for decision. That question can arise only in the event of an attempt by the fiscal court, following a future sale or threatened sale of some part of the bonds, to ap-

ply the proceeds in contravention of the provisions of the pre-election order.

ROBERT H. WINN for plaintiff.

W. B. WHITE and W. A. SAMUELS for defendant.

OPINION AND ORDER BY JUDGE SETTLE—Overruling the plaintiff's motion for an injunction.

The temporary injunction refused the plaintiff in this action by the Montgomery circuit court, and which, upon his motion, I, as a judge of the Kentucky Court of Appeals, am asked to grant or order the judge of the circuit court to grant, would, if issued, restrain the issuance and sale by the defendant, Montgomery county fiscal court, of the whole or any part of certain bonds of Montgomery county, limited in aggregate amount to $250,000, which at an election duly held May 28, 1921, and by more than the required majority of the votes therein legally cast, it was determined by the citizens of that county should be issued and sold, as needed for the construction and reconstruction of public roads and bridges therein.

The record shows that the election in question was legally ordered, advertised and held, and that it resulted as already stated, but the petition attacks the validity of the election and denies authority on the part of the fiscal court to issue or sell the bonds, because of an alleged condition imposed by an order of that court, made after the entering of the order calling the election, but two weeks before it was held, which, in effect, provides that the money to be realized from the sale of the bonds shall not be spent in the construction of any road at the cost of the county alone; hence, it is argued, that if neither federal nor state governmental aid is furnished the money could not be expended, and in such event a sale of the bonds by the fiscal court would be unnecessary and unauthorized. The order referred to, after declaring it fair that the voters of the county should be advised before the election as to the roads upon which the proceeds of the bonds would be expended, naming such roads and designating for first construction or reconstruction out of the bond proceeds three of the roads named which already had been made a part of the state's primary system of highways and assured of federal and state aid, proceeds as follows:

"Whereas, with such state and federal aid on said named roads, and on any other roads that may hereafter

be designated as state and federal aid roads, or either, this court is of the opinion that a fair system of roads can be built in this county. Now, be it resolved by this court, that this court will, from the proceeds of the bonds aforesaid, expend such portions of same as may be required on said three named roads in conjunction with state or federal or private aid, or all, and on such other roads as may from time to time be the beneficiaries of such state or federal or private aids, or all, and not otherwise; but it is distinctly reserved, excepted and provided that under no condition or circumstances shall the proceeds or any part of same, of the bonds aforesaid, if voted, be used otherwise than to pay for not exceeding twenty-five per cent of the total cost of such building, constructing or reconstructing.''

It is plain from its recital of the fact that the order was made to enable the voters of the county to understand in advance of casting their votes in the approaching election, the course that would be pursued by the fiscal court, in case of an affirmative vote, in expending the money arising from the sale of the bonds; and it is admitted that the order upon its entry and down to the election was advertised in the county newspapers and by speakers at all the numerous meetings held throughout the county for considering and discussing in all of its aspects the question whether the bond issue should be authorized or rejected by the voters, so it cannot be doubted that its provisions were understood and approved by the latter.

We may concede, therefore, that the order in question is to be regarded as in the nature of a contract between the fiscal court and the voters of Montgomery county, by which, as held in Scott v. Forrest, County Judge, 174 Ky. 672; Campbell v. Clinton County, 176 Ky. 396; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45; Percival, etc. v. City of Covington, etc., 191 Ky. 337; Reynolds v. Bracken County, 192 Ky. 180, both are equally bound; and further concede that by its terms the expenditure by the fiscal court of the proceeds of the bond issue is limited to twenty-five per cent of the total cost of such roads as are constructed by federal, state or private aid; but these admitted facts afford no ground for declaring the bond election void as prayed in the petition, nor for the injunctive relief therein sought by the plaintiff as a taxpayer of Montgomery county.

It is apparent from the statements of fact in the order referred to, and is not put in issue by any averment of

the petition, that when it was entered both federal and state aid to the extent of 75 per cent of their total cost had been assured through the state highway commission to the construction of at least three roads in Montgomery county named in the order, and it appears from the admissions of the petition that one of the roads named is a road running from the city of Mt. Sterling, county seat of Montgomery county, to the city of Winchester, county seat of Clark county; that the state and federal governments are now ready to build this road and have ordered its construction in accordance with plans and specifications provided by the state highway commission, 75 per cent of the total cost of which construction will be paid by them and the remaining 25 per cent, amounting to $35,000.00, by Montgomery county, to raise which its fiscal court is proposing to issue and sell that amount of its bonds under the authority resulting from the election of May 28, 1921. The purpose of the plaintiff in bringing this action was to enjoin the sale of these bonds and any future attempted sale by the defendant, fiscal court, or others for a like purpose.

We do not find it alleged in the petition or otherwise shown that the road mentioned will not be constructed and paid for in precise compliance with the order of the fiscal court in question, nor is it charged that the sum of $35,000.00, to be raised by the sale of bonds of that value, will exceed 25 per cent of the total cost of constructing the road from Mt. Sterling to Winchester, or even that the proceeds of the entire $250,000.00 of bonds would more than pay the county of Montgomery's 25 per cent of the total cost of constructing the other roads mentioned in the fiscal court's order as having already been assured both state and federal aid. The $35,000.00 of bonds the fiscal court is now proposing to issue and sell will, it appears, be the first sale of any part of the authorized bond issue. Others will be sold from time to time and only as needed for the construction of such roads as are assured governmental or private aid; and in the absence of a charge and showing of bad faith or intended present or future misapplication by the fiscal court of the proceeds arising from the sale of the bonds in question, it will not be presumed that they will not be expended as required by the orders of the fiscal court. Obviously, upon the facts presented by the petition, what was intended by the order of the fiscal court complained of as a safeguard around the expenditure of the proceeds of

the bond issue, cannot, as argued by plaintiff's counsel, reasonably be regarded as a "negation of the duty cast upon the fiscal court by the statute to build the roads when the money was voted." The validity of the election, therefore, was not affected by the presence of that safeguard in the order.

As upon the showing made in this case it is apparent that both the state and federal governments are extending aid to the building of roads in Montgomery county, the fiscal court's order, made in good faith before the bond election, providing the manner of expending in such construction the money arising from the sale of the county's bonds should be held binding, certainly as long as the state or nation is contributing moneys to such road construction in such a way as that any part of either may be made available for that purpose under its terms.

Whether upon the withdrawal of such aid, and only upon its cessation, the fiscal court might be declared to have the power to expend the money from the bond issue without state or federal aid, or under a different plan, such as in Lawrence County v. Lawrence Fiscal Court, *supra,* was held permissible, need not now be decided and properly is not here for decision. That question can arise only in the event of an attempt by the fiscal court, following a future sale of some part of the bond issue and threatened application of the proceeds in contravention of the provisions of the pre-election order.

It follows from what has been said that the motion of the plaintiff for an order of injunction must be and is overruled. Judges Thomas, Clay and Sampson sat with me in the consideration of the questions presented by the motion and all concur in the conclusions herein expressed.