## Mercer County Fiscal Court et al. v. Slaughter.

(Decided June 6, 1930.)

C. E. RANKIN for appellants.

ROY E. GRAVES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

On March 5, 1927, at an election duly called and held throughout Mercer county, it was voted by a majority of 755 ballots to issue the bonds of the county to the amount of $250,000 "for the purpose of building, constructing and reconstructing the roads and bridges in said Mercer county, Kentucky, which *are* designated as State Primary Highway Projects." (Our emphasis.) That statement was literally, or substantially, incorporated in the

petition to the county court asking for an order calling the election, in the order of court calling it, and was also printed on the ballot voted by the electors at the election. At that time there was but a small mileage of the roads in the county that had theretofore been so designated by the Legislature, and in due time, with the aid of the state highway commission paying three-fourths the cost and the county one-fourth, the larger portion if not all the roads in the county as were so designated at the time, were constructed, leaving a large balance of the voted bonded indebtedness untouched, and the amount of which represented unsold bonds, since the fiscal court sold them for only such amount of the voted indebtedness from time to time as was necessary to defray its one-fourth part in constructing the highway projects in the county that had been so declared at the time the election was ordered and held.

The Legislature at its 1930 session enacted that the turnpike in Mercer county theretofore known as the "Perryville Turnpike" should be one of the road projects in the commonwealth, and annexed it to a theretofore declared one, and which included that portion of the turnpike extending from the line between Mercer and Boyle counties to Danville, and which later was created at the 1928 session of the Legislature. Both of such latter acts, so declaring the Perryville turnpike a part of the road projects of the commonwealth, are now conceded to be in full force and effect. The fiscal court of Mercer county was arranging, preparing, and threatening to order a sale of a part of the voted bonded indebtedness, supra, sufficient to defray its one-fourth part in reconstructing, in conjunction with the state highway commission, that portion of the Perryville turnpike within the county when this action was brought against it and its members, to enjoin them from doing so upon the ground that the voted indebtedness at the election held on March 5, 1927, could be used and appropriated only to the construction and reconstruction of "roads and bridges in said Mercer county, Kentucky, which are (were at the time of the election), designated as State Primary Highway Projects," and that to devote part of such voted indebtedness, or proceeds of bonds authorized to be issued as contemplated and threatened by defendants, would be a diversion of the funds to a purpose other than that for which the indebtedness and the authorized issual of the bonds were *expressly* voted and

ordered. The cases of Scott v. Forrest, 174 Ky. 672, 192 S. W. 691; Campbell v. Clinton County, 176 Ky. 396, 195 S. W. 787, and others following them are relied on in support of that contention.

Defendants demurred to the petition, but without waiving it, and before it was acted on by the court they filed their answer to which a demurrer was filed by plaintiff, which the court sustained over defendants' objections and exceptions, and the court overruled their demurrer to the petition, and they declining to plead further, judgment was rendered granting the relief prayed for in the petition, and defendants were enjoined from selling bonds representing any portion of the voted indebtedness to be devoted to the purpose of constructing or reconstructing any part or portion of Perryville turnpike in Mercer county that between the time of the election and the filing of this action had been made a part of the state highway projects in the commonwealth. From the judgment so rendered defendants prosecute this appeal.

It will be perceived that for the principles declared in the relied on cases to be available the order of the county court calling the election must be construed so as to designate the *precise* and *particular* roads proposed to be constructed or reconstructed with the proceeds of the proposed voted indebtedness. But counsel for plaintiff and appellee, in appreciation of that fact, takes the position, and argues in this court, that the verb "are" in the last excerpt from the petition for the calling of the election, and the orders of court and in the question submitted to the voters as printed on the ballot, is in the present tense, and which served to confine and limit the state projects in the county upon which any portion of the voted indebtedness could be spent (either in construction or reconstruction) to those that were designated as such by the Legislature *at the time* of the election, and which excluded any such designated projects within the county as might thereafter be made by any future Legislature. If that premise of counsel is correct, the judgment of the court was proper, and should be affirmed; but, if incorrect, then the judgment should be reversed.

In the case of Wilson v. Fiscal Court of Caldwell County, 194 Ky. 737, 240 S. W. 743, 744, in discussing the doctrine of the cases, supra, relied on by plaintiff in support of his instant cause of action, we said: "At this

point, and before taking up for interpretation the order relied on, it may not be improper to state that, while we still approve of the doctrine of those cases, yet it creates a restraint upon the powers and duties of fiscal courts and other county public road authorities in the exercise of their functions relating thereto, and it will not be extended, nor applied, unless a clear case is presented, nor will any such contract or agreement be implied from language not clearly indicating an intention to specifically designate the particular road or roads to be constructed or improved." In the cases, supra, and which were the ones referred to in that excerpt from the Wilson opinion, the order of the court calling the election *specifically* designated and named the roads to be constructed or improved with the fund so raised, and because of which it was held that no part of it could therefore be expended to construct or improve any road not so named, upon the theory that the specific designation in the order calling the election was in the nature of a promise or agreement to or with the voters that the expenditure of the proceeds of the voted indebtedness should be so limited and confined.

It will be perceived in this case that no specific road or project was mentioned in the order calling the election nor in the petition therefor, or in any other step made or taken throughout the election. Instead, there was only a *class* of roads mentioned, and which was such as "are designated as State Primary Highway Projects." While the word "are" is a verb of present tense, yet the particular "present" to which it refers, and to which it is applicable, may be the one existing at the time the word was employed; or it may mean the (present) time when action is proposed to be taken in carrying out the scheme, project, or undertaking that had been set on foot; and which in this case would be the time when the fiscal court proposed to expend the proceeds of the indebtedness, instead of the time when the indebtedness was voted. As we have seen, at the time the fiscal court proposed to devote a part of the proceeds of the voted indebtedness to the construction or reconstruction of Perryville turnpike in Mercer county, it had theretofore been designated as a part of one of the "Road Projects" in this commonwealth, and, of course, at that time it was one of the class of roads covered and embraced in the purpose for which the voted fund could be expended by the fiscal court of the county.

Remembering the limiting inserted excerpt from the Wilson opinion of the doctrine of the Scott, and other cases, supra, relied on by plaintiff herein, and viewing the situation from the circumstances existing at the time of the voted indebtedness and the purpose contemplated thereby (which was to obtain funds to meet the county's part of constructing the state highway projects within the county), we are constrained to discard plaintiff's interpretation, supra, and to adopt the one contended for by the fiscal court and its members to the effect that the word ''are,'' in the excerpt from the petition, orders, etc., applies and refers to the time when the fiscal court proposes to expend the money as a part of the voted indebtedness. If the particular road then proposed to be so constructed or improved comes within the designated class, i. e., that of being a state highway project, it may be so constructed or improved with such proceeds, and to do so would not be in violation of the principles announced in the cases relied on, since the facts do not bring this case within them. If the word ''now'' had immediately followed or preceded the word ''are'' in the language under consideration, a different conclusion might be drawn, but there was no such specific presently designating word employed in the language under consideration, and without it we feel abundantly warranted in adopting the construction above indicated.

However, we have been able to find at least one case where similar language, though applicable to a different subject-matter, was so construed, and which is that of Barzizas v. Hopkins & Hodgson, 2 Rand. (Va.) 276. In that case similar language of a naturalization act was under consideration by the Virginia Supreme Court. Judge Green, who wrote the principal opinion for the court, and on page 284 of the reported volume, upon the identical point, said: ''The word 'are,' thus used, would necessarily have a future meaning, and import the same as 'may be,' 'shall be,' '' and which construction he adopted for the court as being the one most conducive in carrying out the purpose of the employer of the language under consideration, which was a statute in that case, but in the case before us it was that of the petitioners for the election, and of the court calling it. Judge Cabell of the same court, in writing a concurring opinion, says upon the same subject on page 293 of the same volume: ''It is no objection to this construction, that the

word 'are' is in the present tense, and must, therefore, have a present signification. Even present time is relative. It may have been present formerly; it may be present now; or, it may be present at some future period. The word 'are,' therefore, although in the present tense, has, when applied to a transaction yet to come, a future signification, and is only equivalent to shall, or may be.

We therefore conclude that the court erred in rendering the judgment appealed from, and it is reversed, with directions to sustain the demurrer to the petition and for proceedings consistent with the principles here announced.

Whole Court sitting.